1  ANDRÉ BIROTTE JR.
   United States Attorney
2  ANTOINE E. RAPHAEL
   Assistant United States Attorney
3  Chief, Riverside Branch office
   AMI SHETH
4  Assistant United States Attorney
   California Bar Number 268415
5       3403 Tenth Street, Suite 200
        Riverside, California 92501
6       Telephone: (951) 276-6228
        Facsimile: (951) 276-6237
7       E-mail: Ami.Sheth@usdoj.gov

8  Attorneys for Defendant
   United States of America

9
                    UNITED STATES DISTRICT COURT
10
              FOR THE CENTRAL DISTRICT OF CALIFORNIA
11

12 UNITED STATES OF AMERICA,          ED CR. No. 12-57-VAP

13                 Plaintiff,          GOVERNMENT'S SENTENCING
                                       POSITION; RESPONSE TO
14         v.                          PRESENTENCE REPORT; EXHIBITS

15 CHRISTOPHER WELDON,

16                 Defendant.          SENTENCING DATE: 12/9/13
                                       SENTENCING TIME: 9:00 a.m.

17

18      Plaintiff United States of America, by and through its

19 attorney of record Assistant United States Attorney Ami Sheth,

20 hereby submits its Sentencing Position regarding defendant

21 CHRISTOPHER WELDON ("defendant").  The government recommends

22 that defendant be sentenced to a total of 78 months'

23 imprisonment, a three-year term of supervised release, and a

24 mandatory special assessment of $100.

25      The government's position regarding sentencing is based

26 upon the attached Memorandum of Points and Authorities and

27

exhibits, the documents and records on file in this matter, the Pre-Sentence Report, and further evidence and argument as may be presented before or at the time of sentencing, or which the Court may otherwise wish to consider and direct the government to submit.

The government reserves the right to file a response to any sentencing position filed or submitted by defendant and to file any supplemental sentencing position that may be necessary.


Dated:  November 18, 2013        Respectfully submitted,

                                 ANDRÉ BIROTTE JR.
                                 United States Attorney
                                 ANTOINE F. RAPHAEL
                                 Assistant United States Attorney
                                 Chief, Riverside Branch Office


                                  /s/ Ami Sheth
                                 AMI SHETH
                                 Assistant United States Attorney
                                 Attorneys for Defendant
                                 United States of America

TABLE OF CONTENTS

I. INTRODUCTION ............................................... 2

II. OFFENSE CONDUCT ........................................... 3

III. PRE-SENTENCE REPORT ...................................... 8

IV. GOVERNMENT'S GUIDELINES CALCULATIONS ..................... 9

  A. CUSTODY, CARE, AND CONTROL ENHANCEMENT ................. 9

  B. UNDUE INFLUENCE ENHANCEMENT ........................... 10

  C. COMMISSION OF A SEX ACT ENHANCEMENT ................... 12

  D. VULNERABLE VICTIM ENHANCEMENT ......................... 12

  E. GOVERNMENT'S GUIDELINES CALCULATIONS .................. 13

V. DEFENDANT'S GUIDELINES CALCLUATIONS ...................... 13

VI. ANALYSIS OF THE SECTION 3553(a) FACTORS ................. 15

VII. CONCLUSION .............................................. 19

<u>TABLE OF AUTHORITIES</u>

DESCRIPTION                                                          PAGE

CASES:

<u>United States v. Brooks,</u>
     610 F.3d 1186 (9th Cir. 2010)........................passim
<u>United States v. Egge,</u>
     223 F.3d 1128, 1134 (9th Cir. 2000) ....................10


STATUTES:

18 U.S.C. § 1591 ............................................ 1
18 U.S.C. § 1594(c)......................................... 1
18 U.S.C. § 3553........................................ passim


UNITED STATES SENTENCING GUIDELINES:

U.S.S.G. § 2G1.3 ....................................... passim
U.S.S.G. § 3A1.1(b)(1) ............................... 2, 11, 12
U.S.S.G. § 3B1.2(b) .................................... 7, 12
U.S.S.G. § 3B1.3(a) ........................................7
U.S.S.G. § 3E1.1 ..................................... 2, 7, 12
U.S.S.G. § 5K2.20 ........................................12

1

# MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.  INTRODUCTION

3

On August 1, 2012, a federal grand jury returned an

4

eighteen-count indictment against eight defendants, including

5

Christopher Weldon ("defendant" or "Weldon"), charging them with

6

various crimes related to sex trafficking of both minors and

7

using force, fraud, and coercion.  CR 1.  Weldon was charged

8

with one count of conspiracy to engage in sex trafficking, in

9

violation of 18 U.S.C. § 1594(c) (Count 1) and one count of sex

10

trafficking of Victim 3, knowing Victim 3 was a minor at the

11

time, in violation of 18 U.S.C. § 1591 (Count 14).  Id.

12

The charges stem from defendant's participation in a sex

13

trafficking ring whereby three pimps and gang members – Paul

14

Bell, Samuel Rogers, and Gary Rogers – would recruit young girls

15

to engage in prostitution for the pimps' financial benefit.

16

Presentence Investigation Report ("PSR") ¶¶ 20-23.  As a part of

17

the scheme, the pimps directed their 'bottoms,' a term used to

18

refer to a pimp's most trusted prostitute who was responsible

19

for supervising a pimp's 'stable' of prostitutes, teaching them

20

how to prostitute and specific rules they must follow, and

21

managing their day-to-day activities, to recruit minors and

22

adults for prostitution.  Id., ¶ 24.  Weldon, co-defendant

23

Bell's half-brother, participated in the sex trafficking

24

conspiracy at Bell's direction when Bell was incarcerated.  Id.,

25

¶ 23(d).   Weldon engaged in the sex trafficking of Victim 3,

26

and managed Bell's other affairs while Bell was incarcerated,

27

2

including picking up money from Bell's prostitutes, hiding Bell's firearm to avoid law enforcement detection, and reporting to Bell regarding the progress of Bell's sex trafficking enterprise.  Id., ¶¶ 30-33.

On June 26, 2013, defendant pleaded guilty to conspiracy to engage in sex trafficking, pursuant to a plea agreement with the government.  CR 141, 166; PSR ¶¶ 1-2.  In the plea agreement, the parties agreed to a factual basis, as well as a Base Offense Level of 30 pursuant to U.S.S.G. § 2G1.3(a)(2), and a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.  CR 141; PSR ¶¶ 3-9; Plea Agreement ¶¶ 10, 12, 3(d).  The parties also reserved the right to argue for additional specific offense characteristics, adjustments, and departures, and specifically, the government reserved the right to argue for enhancement pursuant to U.S.S.G. §§ 2G1.3 and 3A1.1(b)(1).  Id., ¶ 12.

II.    **OFFENSE CONDUCT**

The earliest indication of Weldon's possible involvement in a sex trafficking conspiracy relate to two advertisements from Backpage.com (a website often used for prostitution).  See Exhibit A.  The two advertisements provide as follows:

(1)    Dated June 14, 2010, and entitled "*****sexy college girl 'ALMOST' gone wild*****LAX AREA – 19," the advertisement provides that a female named Cassie is "tryin to hang out with a generous gentleman for the evening . . .," and goes on the describe Cassie's

3

looks and list prices as follows: "80qk/120hh/2oohr .
. . (non negotiable)."  The advertisement provides the
female's age as 18.

(2)  Dated June 15, 2010, and entitled "****Two girls
SpEciAl** **CaSSiE & EmaNi** **Hot Hot Hot**
**(Preg0)****** – 19," the advertisement provides that
two "hot girls" are "just Lookin 4 Some Company 4 the
Night," and provides prices for both or either girl
(one of whom is pregnant).  The advertisement also
warns that "WE DONT WANT TO HANG OUT WITH aNy TyPe of
Law EnforceMent . . . lol . . .would you???"

Id.  These advertisements appear to be advertising prostitution
services from two females.  The name provided to Backpage by the
individual who posted these advertisements was Christopher
Weldon, with an address of 427 S. Wilmington Avenue, Compton, CA
90220.  Id.  This address is known as Weldon's residence.  PSR,
p. 2.

Aside from the advertisements for prostitution described
above, Weldon's criminal activities appear to be directed by his
co-defendant and half-brother, Paul Bell.  As provided in the
PSR, Bell was a pimp who recruited and used several minors and
adult females for his prostitution business.  PSR ¶¶ 21-24.
Bell exerted control over his prostitutes through coercion,
manipulation, and physical abuse.  Id.  Bell worked with his
'bottom,' Javiya Brooks, who, at times, was responsible for

4

managing Bell's other prostitutes and teaching them how to work as a prostitute.  <u>Id.</u>

At times, when Bell was incarcerated, Weldon would help Bell manage affairs related to Bell's prostitute enterprise, as well as other criminal activity.  <u>Id.</u>, ¶¶ 30-33.  Importantly, Weldon managed Victim 3's prostitution activities while Bell was incarcerated knowing she was under 18 at the time.  <u>Id.</u>; Plea Agreement ¶ 12.  Specifically, in February, 2011[1], while Victim 3 was working for Bell as a prostitute, Bell spent about one week in jail, and during that time, "Bell directed his brother . . . to take over for him and to make sure Victim 3 continues to make money."  <u>See</u> Exhibit B, redacted portion report of Victim 3's interview; PSR ¶ 31; Plea Agreement ¶ 12.  Victim 3 further stated that during this time, Victim 3 stayed with Weldon at his mother's house located at 407 S. Wilmington St in Compton, and Weldon would drive Victim 3 to different areas known for prostitution, called tracks, so that she could continue making money through prostitution.  <u>Id.</u>  Victim 3 stated that Weldon collected the money she made and that he "was looking for a bottom girl who could start making him money and recruiting for

---

[1] In his Sentencing Memorandum ("Weldon Sentencing Memo"), defendant indicates that based on his recollection, the activities involving Victim 3 occurred in August, 2011.  <u>See</u> p. 5, n. 4.  However, according to both the agreed-upon factual basis in the plea agreement and the evidence, some of which is described herein, Weldon's sex trafficking of Victim 3 took place in February, 2011.  The government takes no position as to whether such trafficking took place again in August, 2011, but notes for the Court that this unlikely because the evidence indicates that Victim 3 and Victim 7 ran away from Bell in or about July, 2011 and did not return.

him." Id.  Weldon admitted to knowing that Victim 3 was 16 years old at the time.  Plea Agreement ¶ 12.

The evidence supports the conclusion that Weldon managed Victim 3's prostitution activities in February, 2011.  First, through toll analysis, agents learned that during this time (from January 29, 2011 through February 9, 2011), Victim 3 had a significant number of incoming and outgoing calls from Weldon – there were more than 100 calls to/from Weldon within this 12-day span.  See Exhibit C, Report regarding call toll analysis of Victim 3's phone.  Furthermore, in a Facebook message dated February 8, 2011, Bell writes to co-defendant Gary Rogers, "I'm home now" and Gary Rogers (using the name Hitter Cix) responds "that's what it do and c-roc doin a good on keeppen yo other one held down."  See Exhibit D, Except from Gary Rogers' Facebook account.  C-Roc is one of Weldon's known aliases.  PSR, p. 2. In this message, Gary Rogers appears to be telling Bell that Weldon did a good job managing Bell's prostitute, Victim 3, while Bell was away.

Weldon's further involvement in the conspiracy is evidenced by jail calls with Bell, most of which occur between July and September, 2011.  The following are examples of those jail calls:

a)   August 9, 2011: Bell told co-defendant Su Yan (another
     co-defendant) to give money to Bell's brother
     (believed to be Weldon).

   b)   August 10, 2011: Bell told Weldon to pick up money
        from Shady (co-defendant Brooks) and he later talked
        to Weldon about pictures on his phone and his Facebook
        account.

   c)   August 14, 2011: Bell called Su Yan and had her call
        Weldon.  Bell told Weldon he needs to get money every
        other day.  Later, Bell told Weldon to get a hold of
        Brooks and lock her in the house.

   d)   August 23, 2011: Bell told Weldon to take over the
        family business while he's locked up.

See Exhibit E, descriptions of various jail calls involving Bell
and Weldon.  The calls above describe Bell's various
instructions to Weldon regarding Bell's prostitution enterprise.
Bell directed Weldon to do everything from picking up
prostitution proceeds, to locking his bottom, Brooks, in the
house.

   In addition, Weldon helped Bell hide a firearm to avoid law
enforcement detection.  Specifically, during an August 7, 2011,
jail call, Bell told Weldon to put the "blammers" in the garage,
which was believed to be a firearm.  Id.  On November 22, 2011,
agents executed searches at 417 and 427 S. Wilmington Avenue,
Compton, CA, and found a firearm in the garage of 417 S.
Wilmington.  See Exhibit F, Report regarding search and
photograph of firearm.  The firearm found appears to be the same
firearm as the one depicted in photographs of Bell holding a
firearm.  See Exhibit G, Photographs of Bell posted on Facebook.

Thus, as also indicated in the PSR, Weldon helped Bell, a felon, keep and conceal a firearm.

### III.   **PRE-SENTENCE REPORT**

The United States Probation Office ("USPO") prepared a PSR, which was disclosed to the parties on August 12, 2013.  The PSR provided the following Guidelines calculation[2]:

```
Victim 3 (Age 16)
     Base Offense Level  :    30    [U.S.S.G. § 2G1.3(a)(2)]
     (Care, Custody)     :    +2    [U.S.S.G. § 2G1.3(b)(1)(B)]
     (Minor Role)        :    -2    [U.S.S.G. § 3B1.2(b)]
     (Acceptance)        :    -3    [U.S.S.G. § 3E1.1]
Total Offense Level      :    27
```

PSR, ¶¶ 45-60.  The PSR calculated a criminal history category of I, based on no criminal history points (it should be noted that defendant has a pending charge for resisting a peace officer from June, 2011).  Id., ¶¶ 64-72.  Based on a total offense level of 27, and a criminal history category of I, the PSR calculated the advisory guideline range to be 70 to 87 months of imprisonment, two to five years of supervised release, and a fine between $12,500 and $125,000.  Id., ¶¶ 117-127.

The USPO identified mitigating factors related to the facts and circumstances of the offense and the defendant's background, and recommended a sentence of 48 months' imprisonment (a downward departure from the guidelines), a three-year period of

---

[2] Pursuant to U.S.S.C. § 1B1.3(a), the advisory guideline range should take into account defendant's conduct, as well as the conduct of others committed in furtherance of the conspiracy, so long as it was reasonably foreseeable to defendant.  In this case, while the offense of conviction, namely, conspiracy to engage in sex trafficking, involves more than one minor, the USPO determined that Weldon is accountable for the conduct involving Victim 3 only.  The government does not object.

1  supervised release under the specified conditions, and a special

2  assessment of $100.  USPO Letter dated August 2, 2013.

3  **IV.    GOVERNMENT'S GUIDELINES CALCULATIONS**

4       Aside from the following objections, the government concurs

5  with the calculations and the factual information provided in

6  the PSR: (1) a two-level enhancement for custody, care, and

7  control may not apply, (2) a two-level enhancement for undue

8  influence should apply, (3) a two-level enhancement for the

9  commission of a sex act should apply, and (4) a two-level

10 enhancement for a vulnerable victim should apply.

11 **A. CUSTODY, CARE, AND CONTROL ENHANCEMENT**

12      Pursuant to U.S.S.G. § 2G1.3(b)(1)(B), a two-level

13 enhancement applies when "the minor was otherwise in the

14 custody, care, or supervisory control of the defendant."

15 Furthermore, the Application Notes to this section provide that

16 the provision is intended to have broad application.  U.S.S.G.

17 § 2G1.3, Application Note 2.  However, the examples and

18 description provided therein provide circumstances whereby a

19 legal guardian entrusts care of the minor to another guardian

20 such as a teacher, day care provider, baby-sitter, or other

21 temporary caretakers.  Id.  In contrast, in the case at issue,

22 there was no official or intended transfer of care, but rather,

23 the victim was in the defendant's custody or care as a part of

24 the criminal conduct at issue.  While the language of the

25 enhancement and Application Notes leaves some room for debate,

26 the Ninth Circuit decision in United States v. Brooks offers

27

1  guidance.   610 F.3d 1186 (9th Cir. 2010).   In <u>Brooks</u>, defendants

2  were charged with child sex trafficking where defendants had the

3  minor victims staying and working as prostitutes out of hotels.

4  <u>Id.</u>  The Ninth Circuit held that the custody and care

5  enhancement should not apply unless the defendant holds a

6  "position of parent-like authority that existed apart from

7  conduct giving rise to the crime."  <u>Id.</u>, at 1201-1202.  There is

8  no evidence that defendant Weldon played such a role vis-à-vis

9  Victim 3 and thus, this enhancement should not apply.

10      **B.**   <u>**UNDUE INFLUENCE ENHANCEMENT**</u>

11      Pursuant to U.S.S.G. § 2G1.3(b)(2)(B), a two-level

12  enhancement applies when "a participant otherwise unduly

13  influenced a minor to engage in prohibited sexual conduct . . ."

14  The Application Notes to this section specify that there must be

15  close consideration of the facts to determine whether a

16  participant's influence over the minor compromised the

17  voluntariness of the minor's behavior.  U.S.S.G. § 2G1.3,

18  Application Note 3(B).  Furthermore, there is a rebuttable

19  presumption of undue influence when a participant is at least 10

20  years older than the minor since the substantial age difference

21  can implicitly influence a minor.  <u>Id.</u>

22      As indicated by the specific language of the statute, the

23  defendant does not have to be the influencer – it can be "a

24  participant" of the offense.  <u>Id.</u>  Furthermore, in <u>Brooks</u>, the

25  Ninth Circuit agreed that, "even if Brooks, who has been found

26  criminally responsible for the crime, did not personally unduly

27

influence the girls, he can be subject to the enhancement if another criminally responsible individual . . . exercised the requisite undue influence." <u>Brooks</u>, 610 F.3d at 1199 (citing <u>United States v. Egge</u>, 223 F.3d 1128, 1134 (9th Cir. 2000)).

In this case, Victim 3 was unduly influenced by several individuals, including co-defendants Alberti (one year older than Victim 3), Samuel Rogers (four years old than Victim 3), and Bell (at least nine years older than Victim 3). Both in this case, as well as in <u>Brooks</u>, where the Ninth Circuit upheld this enhancement, the victim(s) had "no money, no job and, as runaways, nowhere to live." <u>Brooks</u>, 610 F.3d at 1199. The victims in both cases were enticed by money and told they would have a good life if they worked for the pimps.

In this case, Victim 3 had little to no financial resources, had nowhere to live, once she ran away, and no family support. PSR ¶ 34. Furthermore, Victim 3 had two babies that had been taken away from her. <u>Id.</u> Co-defendant Alberti then enticed her by telling Victim 3 that she could make a lot of money and take care of herself through working for Alberti's pimp. <u>Id.</u> Samuel Rogers and Bell both unduly influenced Victim 3 using the lure of money and attention. <u>Id.</u> Furthermore, Bell regularly physically abused Victim 3 to keep her from disobeying him. <u>Id.</u> Victim 3 was clearly unduly influenced by the participants, and the two-level enhancement should apply.
//

1

    **C.   COMMISSION OF A SEX ACT ENHANCEMENT**

2

    Pursuant to U.S.S.G. § 2G1.3(b)(4)(A), a two-level

3 enhancement applies when "[t]he offense involved the commission

4 of a sex act or sexual conduct . . . "  Given that Victim 3

5 worked as a prostitute while she was managed by Weldon, and

6 Weldon admittedly collected money on behalf of Bell from Victim

7 3 that she earned through prostitution, there should be little

8 dispute that this offense involved the commission of a sex act.

9 Thus, this enhancement should apply.

10

    **D.   VULNERABLE VICTIM ENHANCEMENT**

11

    Pursuant to U.S.S.G. § 3A1.1(b)(1), a two-level enhancement

12 applies when "defendant knew or should have known that a victim

13 of the offense was a vulnerable victim . . ."  While this

14 enhancement should not apply when the factor making the victim

15 vulnerable is incorporated in the offense guideline (such as

16 age), in this case, Victim 3 was a vulnerable victim for reasons

17 beyond her young age.  Specifically, Victim 3 did not have an

18 involved, supportive family and was living in a group home when

19 she ran away from home.  PSR ¶ 34.  When she came to work for

20 Weldon, she had been living at Bell's apartment with other

21 prostitutes.  Victim 3 also had children who had been taken away

22 from her.  Id.  Furthermore, Victim 3 had no financial resources

23 or legitimate source of income to provide her with the means to

24 leave Bell and the sex trafficking ring.  Id.  While Weldon may

25 not have known all of the specific details of Victim 3's

26 background and history, based on the fact that he managed her

27

prostitution activities for at least one week while Victim 3 lived at Weldon's house, he should have known that she was vulnerable.  Thus, this enhancement should apply.

### E.   GOVERNMENT'S GUIDELINES CALCULATIONS

Based on the aforementioned arguments, Weldon's guidelines calculation should be as follows:

```
Victim 3 (Age 16)
      Base Offense Level  :    30    [U.S.S.G. § 2G1.3(a)(2)]
      (Undue Influence)   :    +2    [U.S.S.G. § 2G1.3(b)(2)(B)]
      (Sex Act)           :    +2    [U.S.S.G. § 2G1.3(b)(4)(A)]
      (Vulnerable Victim) :    +2    [U.S.S.G. § 3A1.1(b)(1)]
      (Minor Role)        :    -2    [U.S.S.G. § 3B1.2(b)]
      (Acceptance)        :    -3    [U.S.S.G. § 3E1.1]
Total Offense Level       :    31
```

Based on a Criminal History Category of I and an offense level of 31, defendant's guidelines sentencing range is 108-135.

### V.   DEFENDANT'S GUIDELINES CALCLUATIONS

In his Sentencing Memorandum, defendant argues for a reduction under U.S.S.G. § 5K2.20 for aberrant conduct and for a four-level reduction for minimal role (rather than a two-level reduction for a minor role).  However, neither reduction should apply to defendant's conduct.

As defendant correctly stated, the aberrant conduct reduction applies when defendant is involved in a single criminal occurrence or transaction.  Weldon Sentencing Memo, p. 8-9.  However, defendant's conduct was limited in neither duration, nor scope.  As to duration, the evidence indicates that defendant's criminal conduct began as early as February, 2011 (not considering the possible criminal conduct from June,

13

2010, for the Backpage advertisement), and he continued to further the conspiracy until at least August, 2011.  Regarding the nature and scope of defendant's criminal conduct, contrary to defendant's suggestion that he only collected prostitution proceeds, defendant did a number of things to further the conspiracy, including, but not limited to, driving Victim 3 to and from areas known for prostitution, collecting the prostitution proceeds from Victim 3, housing Victim 3 while she worked as a prostitute, keeping Bell apprised of his prostitute business while he was incarcerated, managing the prostitutes at Bell's apartment, and hiding a firearm on Bell's behalf. Collectively, defendant's actions made it possible for Bell to run his prostitution enterprise from behind bars.  Such conduct does not warrant this reduction.

Weldon's conduct also does not warrant a reduction greater than two levels for his role in the offense.  While the government does not object to the PSR's determination that Weldon played a minor role, it agrees with the USPO that a minimal role adjustment does not apply here.  PSR ¶¶ 49-53.  In support of the greater reduction, defendant asserts that – unlike others involved in the conspiracy – defendant's conduct was limited to Victim 3.  Weldon Sentencing Memo, p. 9-10. However, defendant's guidelines calculations reflect this fact given that they only contemplate the criminal conduct related to Victim 3.  If the conduct involving the other victims had been reasonably foreseeable to Weldon, his guidelines calculations

1  would have included a separate calculation for each victim and

2  there would have been several additional levels added to the

3  offense level through grouping.  Furthermore, while Weldon

4  alleges that he did not benefit from the conspiracy, this does

5  not change the fact that the victims – especially Victim 3 –

6  were deeply harmed due to Weldon and the actions of his co-

7  conspirators.  Thus, defendant's role was greater than minimal

8  in this case.

9  **VI.**    **ANALYSIS OF THE SECTION 3553(a) FACTORS**

10       The government hereby recommends that the Court sentence

11  defendant to 78 months' imprisonment, a three-year term of

12  supervised release, and a mandatory special assessment of $100.

13  The government believes that this sentence is appropriate and no

14  greater than necessary to satisfy the factors set forth in 18

15  U.S.C. § 3553(a).

16       18 U.S.C. § 3553(a)(1) requires the Court to consider the

17  nature and circumstances of the offense and the history and

18  characteristics of defendant.  The nature of defendant's

19  offense, the harm of defendant's conduct on the victims, and

20  defendant's background reflect the need for a 78-month prison

21  sentence.

22       As to defendant's criminal conduct, defendant played an

23  essential role in the sex trafficking conspiracy.  To Bell,

24  Weldon was someone who could be counted on to do what Bell

25  needed while he was in custody.  While we cannot know what would

26  have happened had Weldon refused to help Bell, it is possible

27

that Bell's conspiracy would not have continued as it did without Weldon's help.  Among Weldon's criminal actions that furthered the conspiracy, the most serious is likely his managing of Victim 3's prostitution activities for approximately one week.  Despite the fact that Weldon knew that Victim 3 was a minor, he agreed to drive her to areas where she could work as a prostitute, pick her up when she was done, and collect money for Bell from Victim 3.  While the government does not dispute Weldon's assertion that he did not keep any of the money, he facilitated the prostitution activities of a minor.  Such conduct is not only serious in nature, but, when it is considered with all of the other things Weldon did to further the conspiracy, it is clear that Weldon's actions contributed to the criminal enterprise and he should be punished accordingly.

However, in mitigation, the government considered defendant's role in the conspiracy, which was minor in nature as compared to that of the co-defendants, and the fact that the evidence indicates that Weldon did not engage in any form of abuse with the victims.  Furthermore, Weldon was not involved in recruiting or grooming the victims.  The government also considered, in mitigation, Weldon's age (22 at the time), and the fact that he was directed to engage in the conspiracy by his older half-brother.

With respect to the defendant's background and characteristics, aside from the criminal conduct in this case and defendant's pending charge related to resisting a peace

16

officer, defendant's personal background is commendable.  The
government's 78-month recommendation, which contemplates a
three-level downward variance, is partly motivated by the
mitigating factors presented in the PSR and in Weldon's
Sentencing Memorandum, as well as the attached letters in
support of Weldon.  Specifically, despite being raised with co-
defendant Bell, Weldon has managed to live a law-abiding life
where he has shown that he can manage significant
responsibilities including caring for his grandmother, his
girlfriend and child, and maintaining steady employment.  As is
clear from defendant's own letter, it is more than unfortunate
that defendant is before the Court in this criminal matter given
the fact that he has led a life for which his family can be
proud (aside from the conduct in this case).

18 U.S.C. § 3553(a)(2) requires the Court to consider the
need for the sentence to reflect the seriousness of the offense,
to promote respect for the law, to provide just punishment for
the offense, to afford adequate deterrence to criminal conduct,
to protect the public from further crimes of defendant, and to
provide defendant with needed educational or vocational
training, medical care, or other correctional treatment in the
most effective manner.  As to the seriousness of the offense,
the crimes at issue here, namely, the sex trafficking of minors
and others using force, fraud, and coercion, are highly
dangerous and warrant significant punishment.  These crimes also
result in long lasting harmful effects on victims and the

families of victims.  There is a strong need to afford general

deterrence against such crimes.  These considerations support

the government's request for a sentence of 78 months and a

three-year period of supervised release.

18 U.S.C. § 3553(a)(3) requires the Court to consider the

kinds of sentences available.  Incarceration is appropriate

given the nature of defendant's offense and the significant harm

caused to the victims.  18 U.S.C. § 3553(a)(4) & (5) require the

Court to consider the advisory Guidelines range and any

pertinent policy statements.  In this case, the advisory range

is greater than the sentence recommended by the government.

18 U.S.C. § 3553(a)(6) requires the Court to minimize

sentencing disparity among similarly-situated defendants.

Defendant, in his Sentencing Memorandum, compares co-defendant

Alberti's actions to his own, and argues that a four-year

sentence is appropriate in this case considering that the Court

sentenced Alberti to two years in custody.  However, in stark

contrast to defendant Weldon's involvement, Alberti was not only

a minor when she entered into the sex trafficking conspiracy,

she herself was a victim of the criminal conduct of the co-

defendants' in this case.  Weldon, on the other hand, was never

a victim and never experienced the type of coercion, pressure,

manipulation, and despair that a victim in this case would

experience.  Thus, based on an evaluation of Weldon's conduct as

compared to the other defendants in this case, a sentence of 78

1  months is no greater than necessary to accomplish the 3553(a)

2  factors.

3      18 U.S.C. § 3553(a)(7) requires the Court to consider the

4  need to provide restitution to victims of the offense.  At this

5  time, the government has not received any requests for

6  restitution.

7  **VII.    CONCLUSION**

8      For all the foregoing reasons, the factors set forth in 18

9  U.S.C. § 3553(a) support the imposition of a 78-month term of

10 imprisonment, a three-year term of supervised release, and a

11 mandatory special assessment of $100.

12

13 Dated:    November 18, 2013    Respectfully submitted,

14                               ANDRÉ BIROTTE JR.
                                 United States Attorney
15                               ANTOINE F. RAPHAEL
                                 Assistant United States Attorney
16                               Chief, Riverside Branch Office

17                                _/s/ *Ami Sheth*_

18                               AMI SHETH
                                 Assistant United States Attorney
19                               Attorneys for Defendant
                                 United States of America

20

21

22

23

24

25

26

27